UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| EDWARD YBARRA, | CASE NO. 09cv1188-LAB (AJB) |
|---|---|
| Plaintiff, | **ORDER ADOPTING REPORT AND RECOMMENDATION, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| M MARTEL, Warden, | |
| Defendant. | |

Petitioner, a prisoner in state custody, filed his petition for writ of habeas corpus in this Court. Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72, the petition was referred to Magistrate Judge Anthony Battaglia for a report and recommendation. After receiving briefing, Judge Battaglia issued his report and recommendation (the "R&R"), in which he recommended denying Ybarra's request for an evidentiary hearing and denying the petition. Judge Battaglia denied Ybarra's request for an evidentiary hearing. Ybarra then filed lengthy objections to the R&R.

**I.    Legal Standards**

   **A.    Objections to R&R**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Courts are not obligated to review vague or generalized objections to an R&R; a petitioner must provide specific written objections to invoke the Court's review. *Dawson v. Ryan*, 2009 WL 4730731 at *2 n.1 (D. Ariz., Dec. 7, 2009) (citations omitted); *accord Sison v. Small*, 2010 WL 4806888 at *2 –*3 & n.2 (S.D.Cal., Nov. 18, 2010). Conclusory objections are likewise insufficient. *Sison* at n.2.

Ybarra filed 63 pages of objections to the 16-page R&R. Some effort was apparently made to organize them so as to correspond to particular sections of the R&R, but they are not in any very coherent order, and exhibits as well as other types of documents are included in the objections. The 33-page body of the objections is followed by attached exhibits, which Ybarra asks the Court to read through. Although the objections are disjointed and somewhat difficult to follow, the Court construes them liberally. *Karim-Panahi v. L. A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

As a preliminary matter, the Court notes that Ybarra has included a number of outside documents. Including an exhibit or a copy of another document is not the same as making a "specific written objection" as contemplated under Rule 72(b)(2). Exhibits or courtesy copies of legal authority may *support* objections, but they are not themselves objections.

Ybarra has also included extensive but unexplained citations to or quotations of records and legal authorities, and has copied the text of Westlaw headnotes into his objections. It is not the Court's role to serve as an advocate for any party, even one proceeding *pro se*. The Court therefore does not review isolated, unexplained citations or quotations for the purpose of creating or suggesting arguments. But to the extent possible, the Court has given these citations and quotations a liberal construction and attempted to discern the points Ybarra is trying to make.

/ / /

/ / /

### B. Federal Habeas Review

In addition to the federal habeas standards correctly noted in the R&R, the Supreme Court has recently issued decisions emphasizing certain standards for federal habeas review. The R&R is modified to include citations to these newly-available authorities.

A federal writ of habeas corpus is not available to correct errors of state law. *Swarthout v. Cooke*, ___ S.Ct. ___, 2011 WL 197627 at *2 (Jan. 24, 2011) (citations omitted). And an error of state law is not a denial of due process. *Id*. at *3 (citation omitted).

State courts are intended to be the principal forum for litigating constitutional challenges to state convictions. *Harrington v. Richter*, ___ S.Ct. ___, 2011 WL 148587 at *12 (Jan. 11, 2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at *11 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal habeas review is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. at *12 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

In view of the nature of Ybarra's objections, it is also appropriate to add that the Court must assume the state court findings of fact are correct, and Ybarra has the burden of rebutting this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Discussion

Ybarra was convicted in California state court of vandalism, battery, making a criminal threat, and attempting to prevent a witness from testifying. Based in part on his criminal history, the state court sentenced him to a term of 61 years to life.

The R&R sets forth the state court's findings in detail. It describes his conduct towards his victim over the course of about a year. Among other things, the evidence showed he pushed and slapped his victim; he repeatedly called and came to the trailer where she lived, refusing to leave when asked; he went through her belongings secretly and without permission; he called and told her he had her panties; he yelled at her and called her foul names; he burned her bedding; he broke three windows of her trailer and ran away; he

telephoned her three times on the same day, threatening to kill her and people she was with, and he sent her a menacing letter before she was to testify at his trial. The R&R concluded the evidence against him was "overwhelming."

Ybarra brings four exhausted claims: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prejudicial trial court error, and prosecutorial misconduct. In his objections, Ybarra also spends a good deal of time raising unexhausted claims, such as arguing he should have been allowed to put on more evidence that his victim had hepatitis C and used intravenous drugs,[1] arguing California's "three strikes" law is unconstitutional. He takes exception to various other aspects of his trial counsel's strategy, which he didn't raise in his state court habeas petitions. Finally, in large part his objections constitute a re-argument of the evidence. Apparently, he is asking this Court to review and re-weigh all the evidence and order that he be given a new trial. (Obj. to R&R, 27 (arguing federal district court has discretion to grant a new trial, if the verdict was against the weight of the evidence)).

### A.     Ineffective Assistance of Trial Counsel

In his objections, Ybarra cites multiple pages of trial transcript, then points to various things that happened at trial. He argues that his attorney was ineffective for failing to introduce certain pieces of evidence and for failing to follow the trial strategy Ybarra urged him to. (Obj. to R&R, 17–25.) He also points to a letter his appellate counsel sent, which he thinks said his trial counsel was ineffective.[2] (*Id.* at 6–7.)

---

[1] Evidence of this type was introduced at trial, but apparently Ybarra is now arguing that more evidence should have been introduced.

[2] Ybarra claims this letter was filed as exhibit 8 of 9 to his request for judicial notice, filed on June 15, 2009. He faults Judge Battaglia for failing to rely on it. That request for judicial notice attaches far more than nine exhibits, however, and they are not clearly numbered. The Court was only able to locate two letters, one at page 27 of docket number 13 and a second at page 97 of the same docket number. Neither letter has anything to do with ineffective assistance of trial counsel. The first letter expresses dismay at having received 250 pages of hand-written notes from Ybarra and at his insistence on directing her appellate strategy to focus on what she concluded were unfounded claims, and the second explains the limited nature of the appeal she was filing. Ybarra did attach a portion of the letter to his objections, however (*see* Obj. to R&R, 28), and it doesn't say what Ybarra believes it does. Instead, the letter merely uses ineffective assistance of trial counsel as an example of a claim that would be outside the trial record. And even if Ybarra had a letter

This is, in essence, a blanket disagreement with his counsel's strategy. Ybarra doesn't show that his counsel's strategy was at all unreasonable, much less that his performance fell below the required level. His trial counsel was not ineffective for failing to introduce evidence the trial court had excluded, for failing to cross-examine two police officers who responded to the victim's 911 call.[3]

In addition, the Court has reviewed the excerpt of a transcript of a hearing in the trial court, which he included in his objections to show his counsel was ineffective. (Obj. to R&R, 17–22.) Far from showing his counsel was ineffective, they show Ybarra harbored highly unrealistic expectations of his counsel and the course of action Ybarra thought was appropriate was actually improper and would have been ineffective. That transcript shows Ybarra retained control over whether to plead guilty and whether to testify at trial, but that Ybarra's attorney was appropriately in charge of other strategic decisions. The trial judge attempted to explain to Ybarra that his attorney's approach was correct,[4] but Ybarra persisted in his beliefs.

Elsewhere in his objections, Ybarra appears to be arguing that his trial counsel should somehow have prevented the judge from allowing a 911 recording to be played in the jury room. The actual ruling is discussed below, but as concerns his counsel's performance it is enough to point out that his counsel did do as much as he could have done, by objecting and arguing it was improper.

Furthermore, Ybarra hasn't shown he was prejudiced by anything his counsel did or failed to do. Even if his attorneys had followed the strategy he urges, it is unlikely he would

---

from his appellate counsel saying his trial counsel had been ineffective, that wouldn't suffice to show trial counsel was ineffective.

[3] The 911 call is discussed in more detail in sections II.C and II.D, below. For reasons explained there, Ybarra's trial counsel's efforts to have the call excluded were futile and the officers' testimony (even assuming they had testified as Ybarra now supposes they would) would have had little if any effect on the outcome.

[4] By way of example, Ybarra thought his attorney should have written down Ybarra's statement and introduced it as evidence at the preliminary hearing. The trial judge pointed out this would not have been admitted, and attempted to disabuse Ybarra of his misunderstandings. (Obj. to R&R, 18:21–19:27.) The trial court's assessment of Ybarra's approach was shared by Ybarra's appellate counsel. *See supra* note 1.

have been acquitted. As the state court found, the case against him was overwhelming, and not weak as he now claims.

### B.     Ineffective Assistance of Appellate Counsel

Ybarra argues his appellate counsel was ineffective, that the prosecution's case was "weak" and should have been more effectively challenged on appeal. (Obj. to R&R, 25–26.) He doesn't rebut any of the state court's factual findings, though. Rather, he merely reiterates his arguments, urging the Court to reject the state court's findings and interpret the existing evidence differently. (*See, e.g.,* Obj. to R&R, 30–31 (raising arguments about omission of his last name from a police report, which was raised and rejected by the state courts).)

As noted, the Court defers to the state court's findings of fact unless Ybarra rebuts them by clear and convincing evidence. He hasn't rebutted them. The Court does not find Ybarra's appellate counsel was deficient, much less that she failed to provide effective assistance. His counsel was not ineffective for failing to re-argue his entire case on appeal and obtain a new trial. The state court has made clear a new trial would not have been granted based on the weight of the evidence. His appellate counsel therefore appropriately limited his appeal to one possibly winnable issue, and there is no showing that if she had brought other claims (which, after talking with him, she concluded were unfounded) the result would have been any different.

Furthermore, Ybarra hasn't shown he was prejudiced by anything his appellate counsel did or failed to do. Indeed, for both trial and appellate counsel, the record strongly suggests Ybarra's views about how the trial or appeal should be conducted were unreasonable, and his counsel properly attempted to counsel him and rein him in while at the same time advocating effectively for him.

### C.     Court Misconduct

The victim's state of mind was relevant at Ybarra's trial. The prosecution offered a recording of a 911 call the victim made, in which she said she was afraid of Ybarra in part because he was a criminal and had killed people. This evidence was admitted, with a

limiting instruction being given several times, explaining it was only relevant and could only be considered for the purpose of showing the victim's state of mind.  The judge told the jury that statements in the call about Ybarra shouldn't be accepted as true, and that Ybarra "hasn't been convicted of murder or anything like that." ((R&R at 10n.1 (quoting 8 RT 324)).  After admitting the evidence over Ybarra's counsel's objection, the judge later allowed it to be played in the jury room.

This cannot support habeas relief.  Ybarra's trial in state court was governed by state rules of procedure and evidence, and not federal rules as he now argues.[5]  If the trial court committed any error, it was an error of state law.  Errors of state law do not give rise to federal habeas relief.  *See Swarthout*, 2011 WL 197627 at *2.

Playing the recording did not deprive Ybarra of his confrontation rights or other due process rights.  The trial court's instructions effectively prevented the recording from being misused by the jury, and in any event the victim testified and was cross-examined about what she said.

### D.     Prosecutorial Misconduct

The alleged misconduct here consists of introducing perjured testimony and failing to withdraw or correct it.  Ybarra points to a police report made after two police responded to a 911 call at his victim's trailer home.  The police report omitted his last name.  Ybarra alleges the victim testified falsely when she said the police told her about Ybarra's criminal record, which made her more afraid of him.  This evidence was offered to show the victim's state of mind, an element of the crime.  Ybarra has argued they could not have told the victim about his record, since the police report omitted his last name.  This, he believes, shows they couldn't have known about his criminal record and therefore couldn't have told

/ / /

---

[5] In his objections, Ybarra bases his arguments on federal rules.  He cites federal authority for the principle that the 911 recording shouldn't have been played in the jury room. (Obj. to R&R, 27–28.)  He also argues evidence of other crimes he may have committed was inadmissible under the Federal Rules of Evidence.  (*Id.*, 3–4.)  The R&R cited *United States v. DeCoito*, 764 F.2d 690, 695 (9th Cir. 1985) for the principle that sending properly admitted exhibits into the jury room was permitted.  This citation is intended to show, not that federal practice rules govern state court proceedings, but that a practice that is acceptable in federal court cannot violate clearly established federal law.

the victim about it. He concludes that the victim must have been lying. Ybarra has asked for an evidentiary hearing so that he can obtain the testimony of the two officers.

For several reasons, this claim must fail. First, the testimony was at best unsure. (*See, e.g.*, Pet., 72–73 (excerpt of transcript).) Second, even assuming the victim lied on the stand, there is no evidence the prosecution knew this or discovered her testimony was perjured and allowed it to go uncorrected, as would be required to establish a federal due process claim. *See Pavao v. Cardwell*, 583 F.2d 1075, 1076–77 (9th Cir. 1978) (citing *Napue v. Illinois*, 360 U.S. 264 (1959)). Third, materiality is an element of a due process claim based on a prosecutorial misconduct, *Smith v. Phillips*, 455 U.S. 209, 220 n.10 (1982), and the false testimony (if it was false) wasn't material. Other unchallenged evidence showed Ybarra's victim had many reasons to fear him. He had violently struck her, verbally abused her, broken her windows, burned her bedding, come to her home and refused to leave, and threatened several times to kill her. She had twice called 911 when Ybarra was menacing her. The victim had also been warned by Ybarra's mother to hide and stay inside her home, because Ybarra was on drugs, had a bat, and intended to kill the victim. In short, there was ample other evidence Ybarra's victim was afraid of him, and the allegedly false testimony doesn't meet the materiality standard set forth in *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

No evidentiary hearing is required here, because the police officers Ybarra proposes to call could not offer testimony showing that the prosecution knew the victim's testimony was perjury. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (giving standard for granting an evidentiary hearing). Furthermore, the testimony Ybarra supposes the officers would give would be vastly outweighed by other evidence showing the victim was afraid of him. The record therefore precludes relief. *See id.* (explaining that no hearing is required where the record precludes habeas relief).

### E. Other Objections

Ybarra now raises numerous arguments and claims he didn't raise in state court, or even in his petition. Obviously, the R&R didn't address claims not in his petition. But none

of these are exhausted. To the extent Ybarra is now attempting to raise claims he didn't exhaust in state court, they are barred. And in any event, the Court in reviewing his objections has determined they are meritless.

Ybarra raises one argument he could not have raised before, which is that the California Supreme Court, in denying his petition, was required to issue a full, reasoned opinion rather than a "post card" denial. (Obj. to R&R, 29.) He also seems to be arguing that a "post card" denial is not entitled to deference. These arguments are frivolous; a state court is not required to give its reasons for denying a habeas petition, and even if it does not do so, its judgment is entitled to deference. *Harrington*, 2011 WL 148587 at *9.

Ybarra accuses Judge Battaglia of failing to read the pleadings, failing to review the evidence, and making up falsehoods. (*See, e.g.*, Obj. to R&R, 6, 30–31.) This isn't an adequate objection, and it is demonstrably untrue since the R&R cited to and quoted the evidence. If the R&R was incorrect, Ybarra should have responded by pointing out specifically where it was wrong, and showing why it was wrong. *See* Fed. R. Civ. P. 72(b)(2).

Finally, Ybarra repeatedly asks this Court to review and reassess all the evidence, effectively rehearing his entire case on the papers. He argues that because his trial lasted three days and the jury deliberated for an hour and fifteen minutes, his 61-year sentence is unreasonable. He concludes his objections by asking the Court to read through his entire trial transcript. (Obj. to R&R, 33.) This is not the function of federal habeas review. *Harrington*, 2011 WL 148587 at *12. Furthermore, Ybarra had a trial, a full appeal and state habeas review, and the evidence was more than sufficient to convict him. The amount of time it took to try and convict him is beside the point here.

### III.    Conclusion and Order

The R&R is **MODIFIED** to include the new citations to *Swarthout* and *Harrington*. The Court has reviewed *de novo* all portions of the R&R to which Ybarra objected, and **OVERRULES** his objections. The Court has also reviewed the R&R more generally, and concludes its findings and recommendations are correct. Ybarra's objections are
/ / /

1 | **OVERRULED**, and the Court **ADOPTS** the R&R, as modified. All pending motions are
2 | **DENIED** as moot. The Petition is **DENIED**.
3 |     For reasons set forth above, the standard for issuance of a certificate of appealability
4 | is not met. *See Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000). The certificate
5 | of appealability is therefore **DENIED**.
6 |
7 |     **IT IS SO ORDERED**.
8 | DATED: February 10, 2011

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge